IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

HENRY A. HARMON                                                                                    PLAINTIFF
ADC #103609

V.                                       NO.  4:06cv00740 GTE-JWC

DR. CARL JOHNSON                                                                                DEFENDANT

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**I.  Instructions**

The following recommended disposition has been sent to United States District Court Judge G. Thomas Eisele.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of these findings and recommendations.  A copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR  72201-3325

## II.  Recommended Disposition

Plaintiff is an inmate currently confined to the Pine Bluff Unit of the Arkansas Department of Correction.  On June 20, 2006, he filed a claim for relief pursuant to 42 U.S.C. § 1983 (docket entry #2) along with a separate application to proceed in forma pauperis (docket entry #1).  By order entered July 19, 2006 (docket entry #3), Plaintiff's in forma pauperis application was granted.  By order entered February 18, 2007, all Defendants, with the exception of Dr. Carl Johnson, were dismissed from the suit (docket entry #22).  This was based on a partial recommended decision (docket entry #19).

According to Plaintiff's amended complaint (docket entry #18), by and large a verbatim recitation of his original complaint (docket entry #2), on March 6, 2006, he sent in three sick call slips to the Pulaski County Jail infirmary concerning his swollen testicles, lower abdomen, and urine leakage.  He was not seen.  On April 15, 2006, he brought this situation to Defendant Wyatt's attention, who stated that he would get Plaintiff some medical attention.  Plaintiff wrote his first grievance on April 18, 2006, after he was seen by Defendant Dr. Carl Johnson.  Plaintiff alleged that Defendant Dr. Johnson failed to

conduct a thorough examination, touching only his left testicle, despite Plaintiff sharing with him his symptoms. Plaintiff further alleged that he informed Defendant Johnson that he had a sexually transmitted disease ("STD") and that he had signed a consent form for testing of same when he arrived at the jail. Defendant Johnson told Plaintiff he would follow-up with him in two weeks (Plaintiff's projected follow-up date was early May 2006), but he was not seen and his pain worsened.[1] Plaintiff alleged that Defendant Speer answered his initial grievance and stated that he had been treated when Defendant Johnson examined him. Plaintiff filed another grievance concerning Defendant Johnson's failure to follow-up. This grievance was forwarded to Defendant Randy Johnson, sheriff, notifying him of the alleged cruel and unusual punishment taking place. On May 3, 2006, Defendant Moss was on duty. She contacted the medical clinic to inquire about Plaintiff's follow-up examination and was told that Plaintiff was not on the list to be seen. Defendant Speer signed Plaintiff's second grievance stating that Plaintiff had been seen on April 18, 2006, and no medication had been issued for a sexually transmitted disease or infection. On May 4, 2006, Plaintiff brought his medical condition to Defendant Rodriguez's attention, who contacted his shift supervisor, Defendant McCray. Defendant McCray and two nurses met with Plaintiff. Plaintiff alleged that Defendant McCray stated that Plaintiff's condition was not an emergency situation, even after Plaintiff explained to him that he had not been fully examined or treated. Defendant McCray advised Plaintiff to submit another sick call request. On June 1, 2006, Plaintiff was seen by "Mrs. Johnson," a nurse and non-party. She put some "freeze" on his genital warts, gave Plaintiff antibiotics for the burning

---

[1] Plaintiff claims that his vision was affected and he was not able to stand up straight.

sensation, and wrote him a referral to Defendant Dr. Carl Johnson for a full examination. The following day, Defendant Johnson conducted an STD examination with a q-tip. When he removed the q-tip from Plaintiff's penis, it was covered with blood and pus. At this time Plaintiff claimed he was finally given proper medication.

As stated above, by order entered February 18, 2007 (see docket entry #22), Plaintiff's claims against Defendants Speer, Rodriguez, Moss, McCray, Wyatt and Randy Johnson were dismissed with prejudice. Plaintiff's case was permitted to proceed against Defendant Dr. Carl Johnson only.

On November 13, 2007, Defendant Johnson filed a motion for summary judgment and brief in support (docket entries #67, #68) seeking to dismiss Plaintiff's complaint on the grounds that he has failed to state a viable claim. Defendant has also filed a statement of undisputed facts in support of his motion (docket entry #69) pursuant to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas. By order entered November 14, 2007 (docket entry #70), Plaintiff was notified of his opportunity to file a responsive pleading opposing Defendant's motion for summary judgment. He was also directed to file a separate, short and concise statement setting forth the facts which he thought needed to be decided at a trial if he disagreed with Defendant's statement of facts. He has filed a response and brief in support (see docket entries #76, #77).

### III.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999). A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial. Celotex, 477 U.S. at 322-23. To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists. Id. at 324; Fed. R. Civ. P. 56(e). A nonmovant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993).

## IV.  Analysis

Although suggesting that a more stringent standard might be appropriate in assessing pretrial detainees' medical claims, the Eighth Circuit has not yet determined that detainees are entitled to greater protection than is found in the Eighth Amendment against jail officials' deliberate indifference to their serious medical needs. See Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir. 1999), cert. denied, 528 U.S. 1157 (2000) (referring to Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 n.8 (8th Cir. 1989) and David v. Hall, 992 F.2d 151, 152 (8th Cir. 1993)). Therefore, the Eighth Circuit has generally analyzed pretrial detainees' medical claims under the standard set forth in Estelle v. Gamble, 429 U.S. 97, 104 (1976).

To prevail on his claim of deliberate medical indifference, Plaintiff must allege and offer substantial evidence of acts or omissions by Defendant "sufficiently harmful to

evidence deliberate indifference to [his] serious medical needs." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle, 429 U.S. at 106)). The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Jolly, 205 F.3d at 1096 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)); see also Stetter v. Riddick, 6 Fed. Appx. 522 (8th Cir. 2001) (unpub. per curiam) (citing Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)). This standard has been well settled for some time and Plaintiff's burden is substantial. In determining whether Defendant was deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Moreover, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Id.

First, Plaintiff must establish that he suffered from an objectively serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would recognize the necessity for a physician's treatment. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). Next, Plaintiff must establish that Defendant was (1) personally aware of his serious medical needs; and (2) deliberately disregarded those needs. Coleman, 114 F.3d at 785-86. Furthermore, when an inmate is complaining about a delay in treatment, as Plaintiff herein is, the objective "seriousness" of the deprivation must be measured by reference to the *effect* of any delay. Coleman, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)). To succeed

on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment, i.e., that Defendant ignored a critical or escalating situation, or that the delay adversely affected his prognosis. Id.; Beyerbach v. Sears, 49 F.3d 1324, 1326-27 (8th Cir. 1995).[2]

According to Defendant, between the dates April 18, 2006, and September 14, 2006, Plaintiff presented at least five (5) times to the medical staff with complaints of pain to his genital area and was provided with different forms of therapy (see docket entry #67, "Exhibit A" Affidavit of Carl Johnson M.D. ¶¶7-14). On April 18, 2006, Plaintiff presented to medical staff with complaints of pain in his right testicle and a tingling sensation when he urinated. Nurse Practitioner Pamela Johnson prescribed Ibuprofen to Plaintiff for thirty days (see id. ¶7). On May 10, 2006, Plaintiff presented to medical staff again with complaints of testicular pain, abdominal pain, and a tingling sensation during urination. Nurse Practitioner Pamela Johnson prescribed Doxycycline to Plaintiff, an antibiotic used to treat a variety of bacterial infections, including chlamydia (see id. ¶8). On May 24, 2006, Plaintiff presented to medical staff requesting new antibiotics for what he believed to be genital warts. He admitted that he did not complete his previous antibiotic therapy (see id. ¶9). Defendant personally saw Plaintiff on June 2, 2006. Plaintiff stated that he may have an STD. Upon observation, Defendant Johnson noted no discharge and no nodules. He nevertheless ordered a DNA probe for Plaintiff in order to test for possible sexually

---

[2] See also the following unpublished cases of Jackson v. Hallazgo, 30 Fed. Appx. 668 (8th Cir. Mar. 6, 2002) (unpub. per curiam) (citing Coleman, 114 F.3d at 784) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); O'Neal v. White, 221 F.3d 1343 (8th Cir. July 12, 2000) (unpub. per curiam) (citing Crowley, 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim").

transmitted diseases. The lab reports tested negative for Chlamydia and Gonorrhea (see id. ¶¶11-12). Defendant prescribed the following medications for prophylactic treatment: (1) Ciprofoxacin; (2) Flagyl; and (3) a return to the clinic (see id. ¶13). On September 14, 2006, Plaintiff presented to medical staff again complaining of pain to his testicles and an itching sensation during urination. Nurse Practitioner Pamela Johnson prescribed Flagyl to Plaintiff. Defendant personally saw and treated Plaintiff on April 18, 2006, and June 2, 2006. On each of those occasions, Defendant contends he was aware of Plaintiff's physical symptoms regarding his genitalia, he assessed that Plaintiff's treatment was proper, and determined that no additional medical intervention was necessary (see id. ¶15).

According to Plaintiff (see generally docket entry #76), he submitted sick call requests on March 19, April 1, April 22, and May 4, 2006, concerning the symptoms outlined above. He claims he did not receive the proper medication for an STD until June 2, 2006. He contends that Defendant negligently examined him on April 18, 2006, when he felt only one side of his testicles and did not perform a DNA probe at that time. Plaintiff further disputes Defendant's allegation that nurse practitioner Pamela Johnson prescribed him Ibuprofen and instead contends that it was Defendant who issued that script when he should have prescribed a drug for an STD. In addition, Plaintiff claims that Defendant was suppose to see him two weeks later for a follow up but did not. Plaintiff last contends that Defendant's failure to treat an STD in a timely fashion could result in serious complications, including reproductive sterilization. He further claims that he still has evidence of genital warts on his penis, a direct result of not being provided timely and adequate medical care.

In a final matter, Plaintiff contends that summary judgment is inappropriate because Defendant has failed to fully answer his interrogatories and admissions in a timely manner.[3]

Plaintiff must first establish that he suffered from an objectively serious medical need. He has done so. A lay person would surely recognize the necessity for a physician's treatment if an individual presented with complaints of pain in his right testicle and a tingling sensation when he urinated. Plaintiff must next establish that Defendant was personally aware of his serious medical needs. This he has also done and Defendant does not dispute. However, Plaintiff must also establish that Defendant deliberately disregarded his medical needs, a burden he has not met, as a matter of law. In hindsight, ordering Ibuprofen on April 18, 2006, for complaints of pain to the right testicle and a tingling sensation when urinating may not have been the most efficacious treatment decision, however, at most it was negligent— Plaintiff was prescribed his first course of antibiotics on May 10, 2006, a course of therapy he admitted he did not complete. In addition, the evidence shows that the issues Plaintiff experienced in connection with his testicles, lower abdomen, and urination, were likely not the result of an STD for which he tested negative; therefore, the fact that Defendant Johnson waited until June 2, 2006, to perform a DNA probe does not establish deliberate indifference. Again, the probe was negative. While Plaintiff may have had or does have genital warts (an STD), this lawsuit does not concern the medical treatment he received for same. Last, Plaintiff has failed to

---

[3] On August 10, 2007, Plaintiff propounded interrogatories and requests for production of documents on Defendant (see docket entry #49). On August 22, 2007, Plaintiff filed a premature motion to compel (see docket entry #53). On September 11, 2007, Defendant responded to Plaintiff's discovery requests and on October 15, 2007, Plaintiff filed his second motion to compel (see docket entry #59). Defendant has responded (see docket entry #62). Plaintiff's pending motion to compel does not seek the production of any of his medical records.

come forth with any verifying medical evidence to establish the detrimental effect of the delay in medical treatment.[4]  Plaintiff was seen by medical personnel at least five times between April 18, 2006, and September 14, 2006, for the complaints that form the basis of this lawsuit.  Although Defendant Johnson did not see him two weeks after his initial visit for a follow-up visit, Plaintiff was nevertheless seen by medical personnel three weeks after his initial visit and a course of antibiotics was given that he failed to complete.[5]  It simply cannot be said that Defendant ignored a critical or escalating situation, or that any delay adversely affected Plaintiff's prognosis.  For these reasons, summary judgment is appropriate.

## V. Conclusion

In accordance with the above, IT IS, THEREFORE, RECOMMENDED that:

1.    Defendant's motion for summary judgment (docket entry #67) should be GRANTED and Plaintiff's case DISMISSED IN ITS ENTIRETY.  Dismissal against Defendant Carl Johnson should be WITH PREJUDICE.

2.    All pending motions should be DENIED AS MOOT.

3.    The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any order adopting this recommendation, and any judgment entered thereunder, would not be taken in good faith.

---

[4] As mentioned above, Plaintiff's pending motion to compel does not seek the production of medical records.

[5] Plaintiff was prescribed at least three courses of antibiotic therapy between May and September 2006.

4.     This dismissal should count as a "strike" as frivolous pursuant to 28 U.S.C. § 1915(g).[6]

5.     The evidentiary hearing set for December 19, 2007, will be cancelled by separate order.

DATED this 7th day of December, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the in forma pauperis statutes] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.